IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **DELTA FLEX PARTNERS, LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:24-CV-940-L** |
| | § | |
| **RANDOLPH HOSPITAL, INC.** *d/b/a* | § | |
| **RANDOLPH HEALTH,** | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Delta Flex Partners, LLC ("Plaintiff") files this First Amended Complaint[1] asserting claims against Defendant Randolph Hospital, Inc. *d/b/a* Randolph Health ("Defendant").

### I.
### PRELIMINARY STATEMENT

1. Defendant has failed to pay Plaintiff for the staffing of healthcare professionals at Defendant's hospital.

### II.
### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because this lawsuit involves a controversy between parties of diverse citizenship and the amount in controversy exceeds $75,000.00. Plaintiff is a citizen of Delaware and Texas because MBK Human Capital, Inc., Plaintiff's sole member, is incorporated under the laws of Delaware with its principal place of business in Texas. 28 U.S.C. § 1332(c)(1). Defendant is a citizen of North Carolina, its

---

[1] Plaintiff's First Amended Complaint relates back to and hereby incorporates by reference Plaintiff's Original Complaint.

state of incorporation and where it has its principal place of business. 28 U.S.C. § 1332(c)(1). Accordingly, complete diversity exists between the parties.

3. This Court has personal jurisdiction over Defendant based upon its contacts with the State of Texas. Defendant purposefully availed itself to the privileges and benefits of Texas law in numerous ways. Defendant contracted to receive services from Plaintiff, a Texas entity located in the State of Texas. Defendant directed the services to be performed by Plaintiff in Texas. Defendant provided instructions as to the types of professionals it needed. Plaintiff fulfilled these instructions in Texas by searching for and locating appropriate candidates. Defendant knew that Plaintiff was a Texas entity, that Plaintiff would perform its obligations in Texas, and that Plaintiff expected to receive payment for its services in Texas. Further, Plaintiff's causes of action relate to and arise out of Defendant's connections to Plaintiff and the State of Texas. In short, Defendant's contact with the State of Texas is continuous, resulting from an established business relationship with Plaintiff.

4. Defendant is subject to the jurisdiction of this Court under the Texas long-arm statute and federal and state due process standards.

5. Pursuant to 28 U.S.C. § 1391, venue is proper in this district as a substantial part of the events giving rise to this claim the claims arise within this district. Plaintiff is a Texas entity with its principal place of business located within this district. All of Plaintiff's obligations pursuant to its relationship with Defendant were fulfilled by Plaintiff in this district: Plaintiff agreed to provide services to Defendant, searched for and located appropriate staffing candidates pursuant to Defendant's instructions, dispatched candidates to Defendant's facility, and expected payment for the services it provided. Indeed, Plaintiff's performance for Defendant, the basis of this suit, took place in this district.

## III.
## PARTIES

6.  Plaintiff Delta Flex Partners, LLC is a Texas limited liability company who does business in, and whose principal office is located in, Dallas County, Texas.

7.  Defendant Randolph Hospital, Inc. *d/b/a* Randolph Health is organized and existing under the laws of the State of North Carolina.  Defendant Randolph Hospital, Inc. *d/b/a* Randolph Health is required by statute to designate or maintain a registered agent for service of process in the State of Texas.  Defendant Randolph Hospital, Inc. *d/b/a* Randolph Health's home office is located at 364 White Oak Street, Asheboro, North Carolina 27203.  The Texas Secretary of State is the agent for service of process on Defendant Randolph Hospital, Inc. *d/b/a* Randolph Health because Defendant Randolph Hospital, Inc. *d/b/a* Randolph Health engages in business in Texas, does not maintain a regular place of business in Texas, does not have a designated agent for service of process in Texas, and this lawsuit arises out of Defendant Randolph Hospital, Inc. *d/b/a* Randolph Health's business in Texas.  In accordance with TEX. CIV. PRAC. & REM. CODE §§ 17.044 & 17.045, Defendant Randolph Hospital, Inc. *d/b/a* Randolph Health may be served with process by delivering two (2) copies of the summons and Plaintiff's Original Petition to the Texas Secretary of State to be forwarded on to Defendant Randolph Hospital, Inc. *d/b/a* Randolph Health's home office at 364 White Oak Street, Asheboro, North Carolina 27203. FED. R. CIV. P. 4(h)(1)(A) (generally providing that corporation may be served pursuant to state law).

## IV.
## FACTUAL BACKGROUND

8.  Plaintiff is the country's premier recruiting firm for searching and providing qualified physicians and mid-level medical positions, such as physician assistants and nurse practitioners, to healthcare facilities in need of staffing.

A.  **The Applicable Agreements.**

9. On July 2, 2019, Plaintiff, on the one hand, and Qualivis, LLC ("Qualivis"), on the other, entered into the Subcontracting Agreement for Healthcare Professionals (the "Qualivis Agreement"), a valid and binding written agreement. Qualivis provides healthcare workforce solutions by working with healthcare facilities and staffing agencies to simplify staffing needs through one contract and one contact. Through the Qualivis Agreement, Plaintiff agreed to provide "Services," contractually defined as the provision of "qualified temporary healthcare providers ('Candidates') Candidates [sic], as requested by Qualivis, who will provide temporary labor and perform healthcare services for Clients." Clients, in turn, is contractually defined as "those Qualivis clients (i) for whom Qualivis offers Agency the opportunity for Agency to provide Candidates for such client and (ii) for whom Agency has agreed to provide Candidates for by accepting such client." In exchange for Plaintiff's performance of Services, Qualivis collects compensation from Clients based on the hourly rate for placed Candidates and the number of hours worked (and other miscellaneous expenses), takes for itself a small service fee, and gives the remainder to Plaintiff.

10. Defendant satisfies this contractual definition of "Client," as demonstrated by the Client Term Sheet Randolph Health (Clinical), attached hereto as Exhibit A (the "Term Sheet"). The Term Sheet is a valid and binding written agreement entered into between Plaintiff and Qualivis on July 2, 2019, for the purpose of adding Defendant on as a Client to which Plaintiff would provide Candidates for temporary labor under the Qualivis Agreement. Through the Term Sheet, Qualivis offered Plaintiff the opportunity to provide Candidates to Defendant, and Defendant agreed to do so by accepting Defendant as a Client. Ex. A at 1, 3. Defendant is further specifically defined as a Client in the Term Sheet, which is "incorporated into and form[s] a part

of" the Qualivis Agreement. *Id.*

11. Pursuant to the Qualivis Agreement, "Clients" are "limited to clients that Qualivis has a direct agreement with to act as such client's managed service provider for Candidates." When acting as the managed services provider for a client, such as Defendant, Qualivis generally acts as an agent on behalf of the Client. On information and belief, Qualivis has a direct agreement or agreements with Defendant to act as Defendant's managed service provider for Candidates, granting Qualivis the authority to act on behalf of Defendant (the "Randolph Agreement"). The Randolph Agreement is necessary not only by the nature of Qualivis's business, but also by the definition of "Client" in the Qualivis Agreement. The definition of "Client" requires that Qualivis have "a direct agreement with [Defendant] to act as such client's manage service provider for Candidates," and Qualivis could not have otherwise presented Defendant as a Client in the Client Term Sheet. *See* Ex. A ¶ 1.1.

12. Through the Randolph Agreement, Defendant agreed for Qualivis to manage Defendant's affairs on its behalf by locating staffing businesses, including Plaintiff, to search for and provide qualified physicians to Defendant. Subject to Defendant's control, Qualivis organized and constructed the agreements between the parties whereby Plaintiff would provide Candidates for temporary labor to Defendant, including the Qualivis Agreement, Term Sheet, and Randolph Agreement (collectively, the "Staffing Agreements"). Qualivis's actions in arranging for Defendant to receive Plaintiff's Candidates and their temporary labor were pursuant to the power delegated to Qualivis by Defendant in the Randolph Agreement, and in accordance with Defendant's instructions.

**B.   Services Performed by Plaintiff and Benefits Retained by Defendant.**

13. In accordance with the Staffing Agreements, Plaintiff staffed multiple candidates

for Defendant from November 2022 through June 2023. Specific rates, location assignments, and assignment dates were set forth on a work order confirmation and are recorded in Plaintiff's invoices to Qualivis for the Services performed for Defendant. *See* Plaintiff's Invoices, attached hereto as Exhibit B. This information is further corroborated by the pay reports that Qualivis regularly submitted to Plaintiff. *See* Qualivis Pay Documentation, attached hereto as Exhibit C.

14. The Candidates Plaintiff staffed for Defendant worked for Defendant at Defendant's hospital providing temporary medical services consisting of primarily physical therapy. *See* Ex. B; Ex. C. The Candidates worked for Defendant at its Randolph Health facility under the direction and control of Defendant. *See id.* In total, Plaintiff's Candidates performed more than 3,100 hours of labor for Defendant. *See id.* Defendant then billed insurance providers and third-party payors for the labor provided by the healthcare candidates staffed by Plaintiff. On information and belief, Defendant received payments from third parties for healthcare work provided by candidates supplied by Plaintiff.

C.  **Invoices Under the Staffing Agreements.**

15. The Qualivis Agreement outlines the invoicing scheme by which Plaintiff is compensated for the performance of Services for Defendant, through Qualivis as Defendant's managed services provider. According to the Qualivis Agreement, Qualivis "will invoice each Client for the services performed pursuant to this Agreement based on the time entries and charges properly recorded and submitted by Candidate and Agency and approved by the Client." Such invoices are "payable to Qualivis," rather than Plaintiff. Indeed, Plaintiff is prohibited from directly invoicing Defendant under the Qualivis Agreement as follows: "[Plaintiff] shall direct all contacts or inquiries regarding invoices, billing or payment to Qualivis; [Plaintiff] may not contact

Client regarding such issues directly and shall not send invoices directly to the Client." Thus, Qualivis is responsible for invoicing Defendant for the Services performed by Plaintiff.

16. On information and belief, the Randolph Agreement obligates Defendant to pay Qualivis for the temporary labor performed by Plaintiff's Candidates, and subsequently invoiced by Qualivis to Defendant, within fifteen (15) days of Qualivis's invoice to Defendant. The Qualivis Agreement, in turn, requires Qualivis to pay Plaintiff "within fifteen (15) days of receipt of such payments from the [Defendant]," less Qualivis's "service fee," which is typically between 4-5% "from any amounts invoiced."

D. **Defendant's Non-Payment.**

17. Defendant has retained the proceeds from the healthcare providers supplied by Plaintiff, has failed to pay Qualivis, and Qualivis has therefore not paid Plaintiff. Plaintiff sent Plaintiff's Invoices demanding payment for the amount owed by Defendant. *See* Ex. B. Plaintiff's Invoices reflect the hours worked by Candidates placed with Defendant by Plaintiff who performed temporary labor under the Qualivis Agreement. *See id.* Plaintiff's Invoices further apply and demonstrate the agreed rates for such Candidates. *See id.* Qualivis then subtracts its service fee and an early payment discount, where applicable, under the Qualivis Agreement. *See id.* This information is further corroborated by the information reflected in Qualivis's own records. *See* Ex. C. Below is a summary of the unpaid Plaintiff's Invoices sent to Qualivis:

*Outstanding Balances Owed to Plaintiff from Defendant:*

| **Invoice No.** | **Invoice Date** | **Amount Owed** |
|---|---|---|
| 232455420 | 6/18/2023 | $ 5,630.40 |
| 232255423 | 6/4/2023 | $ 5,552.20 |
| 232055416 | 5/21/2023 | $ 10,044.00 |
| 232055420 | 5/21/2023 | $ 9,936.00 |
| 232055422 | 5/21/2023 | $ 9,344.89 |
| 232055435 | 5/21/2023 | $ 3,348.00 |

| | | |
|---|---|---|
| 232055437 | 5/21/2023 | $ 3,312.00 |
| 232055439 | 5/21/2023 | $ 3,128.00 |
| 231655413 | 4/23/2023 | $ 6,047.33 |
| 231655416 | 4/23/2023 | $ 9,190.80 |
| 231655417 | 4/23/2023 | $ 5,630.40 |
| 231555424 | 4/16/2023 | $ 6,696.00 |
| 231555426 | 4/16/2023 | $ 3,528.00 |
| 231555427 | 4/16/2023 | $ 6,256.00 |
| 231255443 | 3/26/2023 | $ 3,348.00 |
| 231255445 | 3/26/2023 | $ 6,624.00 |
| 231255446 | 3/26/2023 | $ 4,398.75 |
| 231055411 | 3/12/2023 | $ 6,696.00 |
| 231055412 | 3/12/2023 | $ 6,624.00 |
| 230755425 | 2/19/2023 | $ 6,696.00 |
| 230755426 | 2/19/2023 | $ 1,297.35 |
| 230755427 | 2/19/2023 | $ 1,925.10 |
| 230755428 | 2/19/2023 | $ 6,582.60 |
| 224655400A | 2/12/2023 | $ 2,008.80 |
| 224755428A | 2/12/2023 | $ 9,688.22 |
| 224955467A | 2/12/2023 | $ 6,156.00 |
| 224955468A | 2/12/2023 | $ 5,472.00 |
| 224955469A | 2/12/2023 | $ 6,746.85 |
| 230555430 | 2/5/2023 | $ 6,026.40 |
| 230555431 | 2/5/2023 | $ 6,277.50 |
| 230555432 | 2/5/2023 | $ 6,624.00 |
| 230355431 | 1/22/2023 | $ 6,026.40 |
| 230355432 | 1/22/2023 | $ 5,649.75 |
| 230355433 | 1/22/2023 | $ 5,982.30 |
| 230155470 | 1/8/2023 | $ 4,310.55 |
| 230155471 | 1/8/2023 | $ 6,444.90 |
| 230155472 | 1/8/2023 | $ 5,982.30 |
| 225255412 | 12/31/2022 | $ 6,684.71 |
| 225255413 | 12/31/2022 | $ 6,612.30 |
| 225255415 | 12/31/2022 | $ 6,603.29 |
| 224755429 | 11/27/2022 | $ 10,174.50 |
| 224755431 | 11/27/2022 | $ 10,260.00 |
| 224655401 | 11/20/2022 | $ 3,348.00 |
| 224655404 | 11/20/2022 | $ 3,348.00 |
| **TOTAL** | | **$ 262,262.59** |

18.     Qualivis, as described in the Qualivis Agreement, submitted its invoices to Defendant that included the hours, rates, and amounts owed to Plaintiff, as described in Plaintiff's Invoices, for the Services Plaintiff provided to Defendant. On information and belief, the Randolph

Agreement makes clear that Qualivis and Plaintiff are compensated for the performance of Services by the number of hours worked at the agreed hourly rates reflected in Plaintiff's Invoices and the Qualivis Pay Documentation. *See* Ex. B; Ex. C. Further, on information and belief, the Randolph Agreement states that Plaintiff is paid only upon Defendant's payment to Qualivis. Accordingly, Defendant knew that the only way for Plaintiff to be compensated for its Services was for Defendant to pay Qualivis's invoices. Despite this knowledge and Plaintiff's full performance of its Services, Defendant has failed to make ***any*** of the above payments to either Plaintiff or Qualivis. Indeed, the entire amount listed in Plaintiff's Invoices is outstanding. Because the Randolph Agreement requires Defendant's payment to Qualivis for Plaintiff's placement of Candidates and the Candidates' temporary labor under the Staffing Agreements, Defendant was aware that Plaintiff expected to be paid for the Services it rendered to Defendant prior to Plaintiff's performance. Further, Defendant is aware that, by refusing payment to Qualivis, Defendant is depriving Plaintiff of the compensation owed to it.

## V.
### CAUSES OF ACTION

**Count 1:        Quantum Meruit**

19.     Plaintiff incorporates by reference each and every allegation contained in the paragraphs above, as if the same were set forth in full herein.

20.     Through Plaintiff's performance under the Qualivis Agreement and Term Sheet by placing candidates who performed more than 3,100 hours of temporary labor and healthcare services for Defendant, Plaintiff conferred a valuable benefit on Defendant, a Client under the Staffing Agreements. Because Defendant signed the Randolph Agreement with Qualivis, was aware of the Staffing Agreements generally, knew Plaintiff would provide Candidates and temporary labor under the Staffing Agreements for which it expected payment, and actually

accepted such Candidates and temporary labor from Plaintiff by permitting the Candidates' continued work, Defendant knowingly received and accepted the benefits of Plaintiff's Candidates and their temporary labor. Accordingly, Defendant accepted Plaintiff's Services under circumstances from which Defendant knew or should have reasonably anticipated having to pay for them.

21. Through the Staffing Agreements, Defendant represented to Qualivis and Plaintiff that, as a result of the Services provided by Plaintiff, Defendant would compensate Qualivis and, in turn, Plaintiff, for such Services. Plaintiff's Invoices and the Qualivis Pay Documentation detail the hours, rates, and amounts owed to Plaintiff as described in Plaintiff's Invoices for the Services Plaintiff provided to Defendant. *See* Ex. B; Ex. C. Neither Qualivis nor Plaintiff, however, has been paid the money Defendant owes.

22. Based upon fundamental principles of justice, equity, and good conscience, this Court should award Plaintiff actual damages in an amount to be determined at trial, but not less than the amount owing to Plaintiff of $262,262.59, as reflected in Plaintiff's Invoices and the Qualivis Pay Documentation, plus additional interest, costs, and attorneys' fees. *See* Ex. B; Ex. C.

**Count 2:       Unjust Enrichment**

23. Plaintiff incorporates by reference each and every allegation contained in the paragraphs above, as if the same were set forth in full herein.

24. Pursuant to the Qualivis Agreement and Term Sheet, Plaintiff provided Candidates to Defendant who performed temporary labor and healthcare services for Defendant. Defendant obtained the benefit of receiving these Services from Plaintiff. Despite Qualivis's invoicing Defendant and Plaintiff's obligations to pay for the work of Plaintiff's Candidates under the Randolph Agreement, Defendant never paid for these Services. Because Defendant received the

benefit of both Plaintiff's work and the labor of its Candidates, but has not paid for such Services, the benefit to Defendant was obtained by the taking of an undue advantage. *See Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F. 3d 365, 382 (5th Cir. 2020) (courts have "found 'undue advantage' where the offending party did not pay for delivered goods and services," even in the absence of a legal violation).

25. Based upon fundamental principles of justice, equity, and good conscience, this Court should award Plaintiff actual damages in an amount to be determined at trial, but not less than the amount owing to Plaintiff of $262,262.59, as reflected in Plaintiff's Invoices and the Qualivis Pay Documentation, plus additional interest, costs, and attorneys' fees. *See* Ex. B; Ex. C.

**Count 3:    Breach of Contract (Plaintiff as Third-Party Beneficiary)**

26. Plaintiff incorporates by reference each and every allegation contained in the paragraphs above, as if the same were set forth in full herein.

27. In the alternative, Plaintiff alleges under this count as follows.

28. On information and belief, Qualivis and Defendant agreed in the Randolph Agreement that Qualivis, on the one hand, would locate agencies such as Plaintiff to provide qualified temporary healthcare providers to perform temporary healthcare services for Defendant. On the other hand, Defendant agreed to receive, and pay for, Plaintiff's staffing services at the rates reflected in Plaintiff's Invoices and the Qualivis Pay Documentation. Defendant further agreed to timely pay invoices sent by Qualivis, thereby ensuring that Plaintiff's invoices sent to Qualivis were timely paid by Qualivis.

29. On information and belief, the Randolph Agreement is a valid and binding written agreement between Qualivis and Defendant. All conditions precedent have been performed or have occurred. On information and belief, the Randolph Agreement expressly designates agencies,

including Plaintiff, as intended third party beneficiaries to the rights of payment for Services provided to Clients by such agencies.

30. In the alternative, through the Randolph Agreement, Qualivis and Defendant intended to secure a benefit to Plaintiff, obliging Defendant to pay Plaintiff, through Qualivis, for Plaintiff's Services. Further, Qualivis and Defendant entered into the Randolph Agreement directly for Plaintiff's benefit. Indeed, the terms of the Randolph Agreement required that Plaintiff compensate Qualivis and, in turn, Plaintiff, for placing Candidates at Defendant's facility and for the labor performed by such candidates. The rates and hours reflected in Plaintiff's Invoices and the Qualivis Pay Documentation demonstrate the terms, and amount owing, for Plaintiff's performance. *See* Ex. B; Ex. C. Accordingly, Plaintiff is a third-party beneficiary to the Randolph Agreement.

31. Defendant breached the Randolph Agreement by refusing to pay Qualivis's invoices.

32. As a result of Defendant's breach of the Randolph Agreement, Plaintiff has incurred damages in an amount to be determined at trial, but not less than the amount owing to Plaintiff of $262,262.59, as reflected in Plaintiff's Invoices and the Qualivis Pay Documentation, plus additional interest, costs, and attorneys' fees. *See* Ex. B; Ex. C.

**Count 4:** **Attorneys' Fees**

33. Plaintiff incorporates by reference each and every allegation contained in the paragraphs above, as if the same were set forth in full herein.

34. As a result of Defendant's nonpayment, it was necessary for Plaintiff to retain the services of Husch Blackwell, LLP to collect the money Plaintiff is owed. Plaintiff, therefore, seeks a recovery from Defendant for the reasonable costs and attorneys' fees incurred as a result of

Plaintiff's claims for rendered services and performed labor or, in the alternative, breach of contract, as permitted by TEX. CIV. PRAC. & REM. CODE § 38.001, *et seq*.

## VI.
### PRAYER

Plaintiff respectfully requests that this Court, upon final disposition of this matter, enter judgment against Defendant for the following relief:

(A)  Compensatory damages in an amount to be determined at trial, but not less than $262,262.59;

(B)  Pre-judgment and post-judgment interest on all sums at the maximum rate allowed by law;

(C)  Plaintiff's reasonable attorneys' fees and expenses incurred in the filing and prosecution of this action;

(D)  All costs of court;

(E)  Any and all costs and reasonable attorneys' fees incurred in any and all related appeals and collateral actions (if any); and

(F)  Such other relief to which this Court deems Plaintiff is justly entitled.

Dated: January 13, 2025               Respectfully submitted,

                                               */s/ Jacob B. Kring*
                                               **Jacob B. Kring**
                                               Texas State Bar No. 24062831
                                               **Jackson A. Goodwin**
                                               Texas State Bar No. 24137591

                                               **HUSCH BLACKWELL LLP**
                                               1900 N. Pearl Street, Suite 1800
                                               Dallas, Texas 75201
                                               Phone: (214) 999-6100
                                               Fax:   (214) 999-6170
                                               Jacob.Kring@HuschBlackwell.com
                                               Jackson.Goodwin@HuschBlackwell.com

                                               **ATTORNEYS FOR PLAINTIFF**